IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

STEPHEN W. VALDEZ                                                                 PLAINTIFF

VERSUS                                              CIVIL ACTION NO.: 2:24-cv-2721
                                                                      JURY TRIAL DEMANDED

FEDERAL EXPRESS CORPORATION                                               DEFENDANT
d/b/a FedEx®

## COMPLAINT

Plaintiff, Stephen W. Valdez, by and through his attorneys, Johnson & Bennett, PLLC, brings this Complaint for a cause of action arising under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and states as follows:

## PARTIES

1.      Plaintiff, Captain Stephen W. Valdez, is an adult citizen of Pembroke Pines, Broward County, Florida.

2.      Defendant, Federal Express Corporation d/b/a FedEx® (FedEx), is a Delaware Corporation, doing business in the State of Tennessee. Defendant's principal place of business is 3610 Hacks Cross RD, Memphis, TN 38125-8800. Defendant may be served with process through its registered agent, C T Corporation System, 300 Montvue RD, Knoxville, TN 37919-5546.

3.      At all times relevant to the facts of this matter, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e.

1

## JURISDICTION AND VENUE

4.      Jurisdiction of this Court is invoked pursuant to federal question under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. §1343.  This Court has authority to award costs and attorney fees pursuant to 42 U.S.C § 1988.

5.      Pursuant to 42 U.S.C. § 2000e-5(f)(3), venue is proper in the United States District Court for the Western District of Tennessee because the unlawful acts occurred in whole or part in Tennessee and the employment records relevant to this action are maintained at the Defendant's principal place of business  in Memphis, Shelby County, Tennessee which is in the United States District Court for the Western District of Tennessee, Western Division.

6.      On January 4, 2024, Plaintiff timely filed a Charge of Discrimination (490-2024-00909) against Defendant for race/national origin discrimination and retaliation with the United States Equal Employment Opportunity Commission (EEOC) attached as Exhibit A.

7.      On July 3, 2024, the EEOC issued Plaintiff a Notice of Right to Sue for Defendant FedEx's charge which is attached as Exhibit B.

8.      Plaintiff timely files this action.

## FACTS

9.      Plaintiff, Captain Stephen Valdez, is a Hispanic male who is a United States Citizen of Cuban descent.

10.     Capt. Valdez's wife is Columbian and his children are dual citizens of Columbia and the United States.

11.     Capt. Valdez has a Columbian residency visa.Capt. Valdez lives with his family in Columbia between flights for FedEx. Capt. Valdez obtained his Bachelor of Science in Aerospace Engineering from Georgia Institute of Technology (Georgia Tech) in 1985, Summa Cum Laude.

12.     Capt. Valdez began service with the United States Air Force in 1986.

13.     Capt. Valdez is an fighter pilot who served ten and a half years in the United States Air Force (USAF) before becoming a commercial aircraft pilot for Defendant.

14.     In addition to flying combat missions for the USAF in the F-15C fighter, Capt. Valdez was an F-15C Lead Instructor Pilot, Simulator Instructor, Fighter Wing Electronic Combat Pilot and Instructor, Radar and Missile Instructor, Safety Officer, and Director of the Fighter Wing Wartime Planning.

15.     Upon leaving the USAF, Capt. Valdez served as the Chief Instructor Pilot and Director of Operations and Flight at Broward Flight Center in Florida.

16.     Capt. Valdez began working for FedEx on January 21, 1998, as a pilot, based out of Memphis, TN.

17.     Since that time, Capt. Valdez has been a pilot with the Defendant, flying cargo around the world.

18.    Capt. Valdez has served in various flight crew positions since he began working for FedEx, working out of Memphis, TN and Anchorage, AK, including Captain of the MD-11 before moving to the B777 fleet.

19.    Capt. Valdez has been a Captain on the B777 since June 26, 2016.

20.    Capt. Valdez flies internationally for FedEx and his trips usually last 13 to 14 days.

21.    Capt. Valdez typically flies one trip a month and spends the rest of the month with his family in Columbia.

22.    Capt. Valdez has been seeking to advance to the position of Line Check Airman (LCA) since 2017.

23.    The Line Check Airmen is a promotion that allows FedEx captains to train, evaluate and certify the competency of other FedEx pilots with respect to knowledge, skill, and proficiency.

24.    FedEx LCAs have a dual role: they are expected to be both an instructor and an evaluator.

25.    A Check Airmen's role includes normal flight crew duties as well as LCA functions.

26.    Capt. Valdez engaged in protected activity by alleging that FedEx exhibited discriminatory and retaliatory animus in its decision making when selecting LCAs.

27.    Capt. Valdez applied for the LCA positions 9 times between late 2017 and October 2023.

28. Of the 9 applications Capt. Valdez submitted for the LCA positions, he interviewed a total of three times, two of them prior to his initial complaint of discrimination in July 2018.

29. For the number of times and applications that Capt. Valdez has submitted to be an LCA but never chosen, 67 LCAs were hired in lieu of him by Defendant.

30. On August 27, 2020, Capt. Valdez filed a Charge of Discrimination (490-2020-02620) against FedEx with the EEOC alleging discrimination based on race and national origin and retaliation for undertaking protected activity.

31. On July 20, 2022, Capt. Valdez filed a subsequent charge (490-2022-02176) against the FedEx with the EEOC alleging ongoing discrimination based on race and national origin and retaliation for undertaking protected activity.

32. On January 31, 2022, the EEOC issued its Determination and Right to Sue on Charge 490-2020-02620.

33. On April 29, 2022, Capt. Valdez filed his first lawsuit against FedEx for race and national origin discrimination and retaliation (Civil Action No. 2:22-cv-2267-TLP-cgc).

34. Capt. Valdez requested that the EEOC to issue its Dismissal and Notice of Rights on Charge Number 490-2022-02176, which he received on November 18, 2022.

35. On January 5, 2023, Capt. Valdez filed his First Amended Complaint to add the additional allegations of race and national origin discrimination and retaliation set forth in the 2022 charge to his pending litigation (Civil Action No. 2:22-cv-2267-TLP-cgc).

36.     Capt. Valdez's first lawsuit against Defendant encompasses all applications through the end of 2022, the first 7.

37.     After having worked for the Defendant for the past 26 years and having been a Captain of the B777 for 8 years, Capt. Valdez considers the LCA position a natural progression in his career.

38.     The position of Line Check Airmen is a valued position due to the opportunity to substantially increase pay, such as one LCA who earned $940,000.00 one year.

39.     After being interviewed twice in 2017 and 2018, the first two applications Capt. Valdez submitted for LCA, but not being selected, Capt. Valdez hired an attorney to raise complaints of race and national origin discrimination.

40.     On July 2, 2018, Attorney Dan Norwood wrote FedEx's Managing Director, Employment Litigation raising Capt. Valdez's complaints of race and national origin discrimination for his non-selection for the LCA position in either 2017 or 2018.

41.     On July 9, 2018, FedEx Senior Counsel, Employment Group, wrote Capt. Norwood indicating that FedEx was taking Capt. Valdez's allegations seriously and would conduct a thorough investigation.

42.     At a later time, the Defendant's investigation was closed with no finding of any information to support Capt. Valdez's allegations of discrimination.

43.     Capt. Valdez applied for another LCA position on August 27, 2018.

44. On September 6, 2018, Chuck Marshall, B777 Fleet Standards Manager, emailed Capt. Valdez to inform him that he did not receive an interview because Defendant "decided to consider other applicants who more closely meet the overall qualifications and skills needed for this position."

45. Capt. Valdez was as qualified or more qualified for the position of LCA as any of the candidates interviewed and selected.

46. On January 25, 2019, Capt. Valdez applied for another LCA position.

47. Chuck Marshall emailed Capt. Valdez on February 5, 2019, to advise Plaintiff that he was not selected to interview for the position because Defendant "decided to consider other applicants who more closely [met] the overall qualifications and skills needed."

48. Capt. Valdez was as qualified or more qualified for the position of LCA as any of the candidates interviewed or selected.

49. On September 10, 2019, Capt. Valdez was assigned to an international carryover trip in October that extended into November.

50. On September 11, 2019, Flight Operations Training published a job posting for Quarterly Check Airman/Instructor positions (LCA) for the fleet for which Capt. Valdez was a Captain.

51. On September 23, 2019, Capt. Valdez submitted another application for an LCA position to B777 Fleet Standards Manager, Don Ulsh.

52. On October 4, 2019, Ulsh emailed some of the candidates selected for an interview for the LCA position to advise them, "I will be conducting interviews for a LCA position on November 6. Please let me know if you available."

53. On October 4, 2019, Capt. Valdez emailed Ulsh to let him know that he had a carryover trip and would not be available on November 6, 2018.

54. Ulsh did not respond to Capt. Valdez's email.

55. Capt. Valdez did not receive an interview for the September 2019 LCA posting.

56. Capt. Valdez was as qualified or more qualified for the position of LCA as any of the candidates interviewed or selected.

57. On December 28, 2021, Capt. Valdez submitted another application for an LCA position to B777 Fleet Standards Manager, Don Ulsh.

58. Ulsh knew about Capt. Valdez's then pending Charge of Discrimination filed on August 27, 2020, alleging race and national origin discrimination and retaliation based on Defendant's prior refusal to interview and hire Plaintiff as an LCA.

59. On February 8, 2022, Capt. Valdez interviewed for the LCA position.

60. During the interview with Capt. Valdez, Don Ulsh asked Capt. Valdez if Plaintiff knew of any conflict with anyone that would affect Plaintiff's reputation as an LCA.

61. On February 16, 2022, Ulsh notified Capt. Valdez that Plaintiff was not being asked to continue the process as an LCA candidate.

62.     Defendant interviewed five candidates for the December 2021 LCA posting including Capt. Valdez, one white candidate, and three black candidates.

63.     Defendant selected the one black candidate and the three white candidates for the December 2021 LCA posting.

64.     Capt. Valdez was the only candidate interviewed for the December 2021 LCA posting that was not hired.

65.     Capt. Valdez was as qualified or more than qualified for the position than the four candidates selected.

66.     Capt. Valdez was not chosen for an LCA position from July 2018 through February 16, 2022, because of his race and national origin and his complaints of discrimination.

67.     On March 10, 2023, Captain Valdez applied for the LCA position once again, despite Defendant's ongoing refusal to consider him for the position.

68.     17 other applicants applied for the March 2023 positions.

69.     Captain Valdez's total flight time at the time of application was 11,660 hours.

70.     Capt. Valdez had 2866 hours as Captain of the B777.

71.     Captain Valdez has more B777 experience than all comparators selected for the position.

72.     Capt. Valdez came up with a fuel-saving plan that became a part of FedEx's DNA and saves the corporation millions upon millions every year.

73.     FedEx's B777 Fleet Assistant Chief Pilot, Dean Fontenot, who had replaced Don Ulsh, evaluated each applicant in March 2023.

74.     B777 Fleet Assistant Chief Pilot Fontenot was the sole decision maker for the LCA position.

75.     On March 30, 2023, Capt. Valdez received an email from Fontenot indicating that Plaintiff was not selected for an LCA interview, adding that this decision did not diminish the value that Capt. Valdez brought to 777 Flight Operations and offered to discuss it further if Plaintiff wanted.

76.     Fontenot unlawfully gave Valdez a -10 performance score assessing his application packet to ensure he would not be interviewed in retaliation for his protected activity.

77.     All candidates were provided an interview except Valdez and two others.

78.     All interviewed candidates received the promoted position of LCA.

79.     On May 23, 2023, at 1PM, Captain Valdez had a 20-25 minute meeting with Dean Fontenot and B777 Fleet Chief Pilot Ronald Zampini in Zampini's office to attempt to find out why Capt. Valdez was not selected for the LCA Position and what he could do to improve.

80.     Other than vague allusions to looking for "the whole person concept," neither Fontenot nor Zampini could identify anything for Capt. Valdez to do to improve his chances for selection.

81.     Zampini told Valdez that he needed to keep trying and keep flying and build trust with the Chief Pilot (Robin Sebasco) and Assistant Chief Pilot (Don Ulsh).

10

82.     The only interactions Capt. Valdez had with the Chief Pilot were in passing and the only interactions Capt. Valdez had with Ulsh were in passing as well as naming Ulsh as a decision maker that discriminated against him and retaliated against him in his prior charges and lawsuit.

83.     On October 20, 2023, Capt. Valdez once again applied for the B777 LCA position.

84.     Fontenot acknowledged receipt of Capt. Valdez's application on the same day.

85.     On November 15, 2023, Fontenot wrote Capt. Valdez advising him that there were no open LCA positions and that Capt. Valdez's "resume will remain on file in the department so there is no need to apply for any subsequent postings as your resume is in the queue. When positions start to become available, we will contact those qualified candidates for interviews."

86.     This was the first time FedEx told Capt. Valdez to not apply again and it would keep his application on file.

87.     Failure on Capt. Valdez's part to apply for subsequent positions would limit his options to pursue being continuously passed over for the LCA position.

88.     On September 3, 2024, Fontenot sent Valdez an email stating "The Oct 2023 Check Airman posting has been closed. At this time all LCA positions have been filled."

89.     Captain Valdez once again was not selected for the position.

90.     Since Capt. Valdez made a complaint of discrimination in July 2018, he has only been given one interview for the LCA position and has applied at least 9 times.

91.     Capt. Valdez had two interviews before he made his complaint in 2018 and was no longer qualified for an interview thereafter.

92.     FedEx has continuously and repeatedly discriminated against and retaliated against Capt. Valdez by denying him interviews for, much less, an actual LCA position when he is more qualified than those being hired in his stead.

93.     FedEx demonstrates a pattern and practice for retaliation and discrimination.

94.     Ulsh, Zampini, and Fontenot all had knowledge of Valdez's complaint of discrimination, charges of discrimination and retaliation, and subsequent Federal Court lawsuit against FedEx regarding not being hired as an LCA due to Valdez's national origin, race, and retaliation.

95.     Ulsh and Zampini testified on behalf of the company in 2024 in Capt. Valdez's first lawsuit regarding the LCA position denials.

96.     The only reason for Ulsh to not have trust in Valdez, per Zampini during the May 2024 meeting, is because of Capt. Valdez's complaints of discrimination and retaliation.

97.     The only reason for Zampini to tell Valdez that he did not meet the "whole person concept" is because Capt. Valdez sued FedEx for discrimination and retaliation.

98.     The reason Capt. Valdez was not interviewed for an LCA position in 2023 is due to his race and national origin and based upon his complaints of discrimination and retaliation.

99.    The reason Capt. Valdez was not selected for an LCA position in 2023 is due to Plaintiff's race and national origin and because Defendant retaliated against him based upon Valdez's prior complaints of discrimination.

100.    Defendant had notice of Capt. Valdez's complaints of discrimination.

101.    Defendant FedEx violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

102.    Defendant FedEx's violations of Plaintiff's statutory rights under Title VII and § 1981 were intentional, willful, and done in direct disregard for Plaintiff's right to be free from such unlawful discriminatory activity.

103.    Defendant's violations of Plaintiff's statutory rights under Title VII and § 1981 were intentional, willful, and done in direct disregard for Plaintiff's right to be free from retaliation for protected activity.

104.    Plaintiff suffered loss of pecuniary interest due to the actions of the Defendant in discriminating and retaliating against him, including loss of pay, loss of opportunities, benefits, and other tangibles.

105.    Plaintiff has suffered mental anguish and emotional stress, inconvenience, loss of enjoyment of life, loss of income and valuable benefits because of the Defendant's actions.

106.    The violation of Plaintiff's federally protected rights was done with malice or reckless indifference so that Defendant FedEx is liable for punitive damages for its egregious actions.

## PRAYER FOR RELIEF

107.   Plaintiff sustained substantial monetary and non-monetary damages as a result of Defendant's illegal conduct, and Capt. Valdez demands such legal and equitable relief as will effectuate the purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, including but not limited to, the following:

      a. Accrual of back pay, fringe benefits, and other emoluments of employment;

      b. Compensatory damages;

      c. Punitive damages;

      d. Loss of enjoyment of life;

      e. Lost opportunities;

      f. Costs and attorney fees;

      g. Appropriate affirmative action;

      h. Award Plaintiff the LCA position or other equitable relief;

      i. Any interest due on the amount awarded; and

      j. Any other relief that this Court deems just and equitable.

63.   Plaintiff prays that a jury be empaneled to decide this matter and determine damages and that Plaintiff be awarded reasonable attorney fees and costs.

THIS the 28th day of September, 2024.

Respectfully submitted,

STEPHEN W. VALDEZ

14

 s/ *Tressa V. Johnson*

Tressa V. Johnson (BPR #26401)
Kristy L. Bennett (BPR #30016)
**JOHNSON AND BENNETT, PLLC**
1407 Union Avenue, Suite 807
Memphis, TN 38104
(901) 402-6515
tressa@myjbfirm.com
kristy@myjbfirm.com